(Decided October 29th, 1861.)

---

## Samuel Ellinger and others, *vs.* Henry Crowl and Wife.—Henry Crowl and others, *vs.* Agnes P. Crowl, by *prochein ami.*

In cases of fraud and mistake, courts of equity will reform instruments of writing so as to do justice, and make them conform to the intention of the parties, but this can only be done on *clear* and *satisfactory proof.*

Parol proof is inadmissible to vary the considerations stated in deeds, and thereby either to alter their character or to maintain them when impeached for fraud, by showing considerations differing from those mentioned in them.

Indebtedness at the time of executing a voluntary conveyance, is *prima facie* evidence that the deed is fraudulent as to creditors, and the *onus* is thrown upon the grantee to prove, in order to repel the fraudulent intent, that the grantor, at the time, was in prosperous circumstances, and possessed of ample means to pay all his debts.

Where the proof shows a valuable as well as good consideration for the deed, and that, at the time of its execution, the grantor had other property sufficient to pay all his indebtedness, as shown by the record in the case, such deed cannot be successfully assailed by creditors.

Cross-Appeals from the Circuit Court for Baltimore city.

In these cases a bill was filed on the 18th of August 1857, by the appellants in the first case, as well for themselves as

46　v.17

all other creditors of Henry Crowl, against the appellees, to vacate, as fraudulent as against creditors, a deed dated the 1st of June 1857, from Henry Crowl to Agnes P. Crowl, his wife, and on the 26th of September 1857, a bill was filed by Agnes P. Crowl, by her next friend, Edward Murray, the appellee in the second case, against her husband, Henry Crowl, and his creditors, the appellees in the second, and the appellants in the first case, asking that said deed from her husband to her, might be reformed, so as to recite the true consideration upon which it was made, or a new deed decreed to be executed, reciting such true consideration.

The allegations of these bills, and of the answers thereto, and the purport of the evidence in the cause, sufficiently appear from the arguments of counsel, the opinions of this court, and the following opinion of the court below, (KREBS, J.,) delivered upon passing the decrees appealed from:

"The bills filed in the above cases are cross-bills. In the one, Ellinger and the other complainants, alleging themselves to be creditors of Henry Crowl, file their bill to set aside, as voluntary and fraudulent against them, a deed executed by the said Henry Crowl, the husband of the said Agnes, to her, for the consideration of love and affection for her, and the better to provide for her support and maintenance.

"In the other bill, Agnes P. Crowl alleges that the true consideration for the said deed was not natural love and affection, &c., as above stated, but that it was executed in consideration of marriage between her said husband and herself, and of the relinquishment of her right of dower in and to the real estate of the said Henry, and that there was a misrecital in the said deed of the true consideration thereof; and she prays that a new deed, conveying the property described in the said deed to her, and reciting the true consideration therefor, may be executed under a decree of this court. These two cases have been heard together, and if the complainant, Agnes P. Crowl, is entitled to the relief that she asks, the complainants in the other case will necessarily be defeated, and their bill will be dismissed. A very large portion of the evidence produced by the complainant, Mrs. Crowl,

has been offered for the purpose of proving that her husband, before her marriage with him, entered into a marriage contract with her, by which he agreed, in consideration of her marriage with him, to settle upon her a large and valuable part of his estate. This evidence I deem altogether unimportant to the decision of the question presented in her bill, because it is not filed to compel the performance of that contract, by requiring him to settle that property upon her, but to establish her title to a different parcel of his estate, and because if such a marriage contract as is alleged was made, it was, as the testimony shows, abandoned after her marriage, and destroyed, for the purpose of enabling her to set up her right of dower in his property. The true ground upon which her claim to relief is to be sustained, is, that she agreed to relinquish the potential right of dower that she claimed in the land conveyed by her husband to his sons, as mentioned in the proceedings, in consideration of the conveyance to her of the property described in the said deed by his said sons, to whom he had transferred it. I am of opinion that the evidence proves clearly that she was to receive the title to the property described in that deed, in consideration of her relinquishing all claim of dower in the property which had been so conveyed by her husband to his said sons. It is true that when she relinquished this right of dower, they conveyed the property to him; but inasmuch as the consideration for the conveyance moved from her in equity, the trust of the property would have resulted to her. The deed afterwards executed by him to her for love and affection, does certainly embarrass her title, and cast a shade upon it when disputed by creditors. But if the consideration that induced him to execute that deed to her was her relinquishment of her said right of dower, as above stated, and if, through his mistake or misrepresentation in regard to the amount of his debts, or his ability to pay them, made in his statement to the conveyancer, by whom the deed was drawn, he was induced to insert the consideration recited in the deed, instead of the true one, it certainly would not be consistent with equity that she should be deprived of the property. Israel Cook, one of the

witnesses, proves that this was the consideration for the conveyance to her. Mr. Crowl informed Mr. Thompson, the conveyancer, as he testifies, that Mrs. Crowl was justly entitled to dower in real estate that he had conveyed to his children, for which he had received no consideration, and that in consideration of his making this conveyance to her, she would relinquish her right of dower in that land. That, then, was the true consideration. And the reason why it was not inserted by Mr. Thompson in the deed, instead of love and affection, &c., is obvious, from his testimony. He suggested to Mr. Crowl an objection to the conveyance of the property to his wife in the form in which it was done, but that objection was removed by his positive statement that he had abundant means to pay his debts, &c. Now, if the conveyancer was misled by the mistake or misrepresentation of Mr. Crowl, for it was the one or the other, and by reason of being so misled, recited a consideration in the deed that endangers her title under it, it ought to be reformed so as to recite the true consideration, and thus make her title to the property conveyed by it perfect. The conveyancer was certainly misled, if there is any foundation for the proceedings instituted by the creditors of Mr. Crowl, in which they attack the deed, for the very reason that in it it recites the consideration that the conveyancer was induced to insert in consequence of Mr. Crowl's statement to him. I will, therefore, pass decrees in the two cases in conformity with these views."

From these decrees appeals were taken by the creditors and Henry Crowl, the complainants in the one case, and the defendants in the other.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. Pinkney Whyte*, for the creditors:

1st. The ground upon which Agnes P. Crowl asks to have the deed reformed and a different consideration inserted, is stated by the judge below to be, "that she agreed to relinquish her potential right of dower, that she claimed in the land

conveyed by her husband to his son, as mentioned in the proceedings, in consideration of the conveyance to her of the property described in said deed, by his said sons, to whom he had transferred it." In reply to this proposition, it is submitted, that she had no potential right of dower in the property conveyed by Henry Crowl to his sons, because that deed of the Frederick county property, was made by Henry Crowl to his children on the 20th of October 1856, and he was not married to the said Agnes until the 6th of November 1856.

2nd. If she had any right of dower in the Frederick county property, there is no proof to justify the conclusion that the consideration for the deed to her, was a relinquishment of the dower right. It is shown in the testimony, that Henry Crowl filed a bill to set aside the deed to his children, and that that proceeding was abandoned, and the suit disposed of under an agreement in writing which explains the whole settlement. That agreement declares, that Henry Crowl and wife "have agreed, to draw from or destroy from court a law suit" between them and David H. Crowl and others. And in consideration of the reconveyance to Henry Crowl, of certain property, he and his wife are to relinquish all claim or interest in the Frederick and Carroll county land. There is not one word in relation to any compensation to Agnes P. Crowl, for any dower right whatever, but, on the contrary, her rights are entirely ignored; and the deed for the property in dispute, is expressly to be made to her husband. After the receipt of the deed for this property, Henry Crowl makes the deed of the 1st of June 1857, of the same property, to his wife, for the consideration, as stated, of "natural love and affection." It is not distinctly stated in her bill, on what ground, whether of fraud or mistake, the consideration which is now alleged to be the true one, was not inserted in the deed. 6 *H. & J.*, 24, *Wesley vs. Thomas.* 5 *Mason*, 523, *United States vs. Munroe.* The deed was received by her on the 1st of June 1857, and recorded, and not until it was impeached in the following August, was it pretended that any other consideration than that expressed on its face moved Henry Crowl to its execution ? In the an-

swer to the bill, he so insists. And it is submitted that parties to a written instrument, are not to be permitted in controversies with strangers, to insist that the paper does not express what it was intended to express. 2 *Gill*, 409, *Henderson vs. Mayhew.* 6 *Md. Rep.*, 57, *Alderson vs. Day.* 8 *Md. Rep.*, 427, *Anderson vs. Tydings.* 9 *Md. Rep.*, 508, *Campbell vs. Lowe.* 11 *Md. Rep.*, 510, *Cooke vs. Husbands.* When a deed is impeached for fraud, the party to whom the fraud is imputed, will not be allowed to prove any other consideration in support of the instrument. 1 *H. & G.*, 187, 201, *Betts vs. Union Bank.* 1 *Gill*, 422, *Cole vs. Albers & Runge.* The decisions in this State are conclusive to show, that parol proof is inadmissible to vary the consideration stated in deeds, and thereby alter their character, or to maintain them when impeached for fraud by showing considerations different from those mentioned in them. 2 *Md. Ch. Dec.*, 455, *Sewell vs. Baxter & Wife,* affirmed in 3 *Md. Rep.*, 334, and cases there cited. The effort here is, by setting up a new consideration and reforming the deed, to get rid of the attack upon it by creditors, who seek to set it aside as fraudulent and void. The testimony to sustain such a proposition has been excepted to. If the consideration in the deed be a true one, then it is void, and especially so under the Act of 1853, ch. 245. Unless, therefore, there is good evidence that she is a purchaser for a valuable consideration, the deed must fall. But if it is competent to offer parol proof to show that the true consideration was not inserted in the deed, can it be possible that such proof is to be given from the mouth of the husband, against whom the bill has been filed? 1 *Md. Ch. Dec.*, 527, *Brooks vs. Dent.* The answers deny the existence of any mistake, and in such cases there should be the strongest possible proof. 6 *H. J.*, 445, *Watkins vs. Stockett.* 1 *Md. Ch. Dec.*, 241, *Goldsborough vs. Ringgold.* 1 *Brown's Ch. Rep.*, 92, *Irnham vs. Child.* 9 *Gill*, 430, *Beard vs. Hubble.* *Adams Eq.*, 406, and *notes.* 5 *Mason*, 575, *United States vs. Munroe.*

3rd. An examination of the testimony, if admitted by this court, will hardly justify the action of the court below, in

granting a decree in favor of Agnes P. Crowl. Israel Cook testifies, that the compromise was between Henry Crowl and his sons, and they were to give *him* the property, "witness made the proposition as their arbitrator, that they would give the deed to *her*, but they refused then, but they would give the deed to him, and he could do what he pleased with it." There was no contract here for the relinquishment of dower in that property, nor was she recognised by the sons, in any way, as having any claim thereon, or as entitled to any remuneration. The same witness shows, that the property in Frederick and Carroll counties, was worth about $19,000, less $7000 due upon a mortgage. The property conveyed to her was worth $6000. So that if it was to be believed, that the relinquishment of her dower right was the consideration for this deed, she conveyed her dower interest in $12,000 worth of property, and got $6,000 in return. If her husband had been dead, and she had really a vested right of dower, and her age twenty-six years, she would have been allowed, by the chancery rule, exactly $1714.28; and it would be hard to understand upon what principle she could obtain more than three times as much for a right of dower, which never existed at all. There is no evidence to show, that she was ever asked to sign any deed in relation to the Frederick county property, but that it was entirely a private arrangement between her and her husband. The inducement came from Henry Crowl and not from the sons who held the deed for that real estate, the validity of which was recognised by all the parties as shown by the reconveyance from the son to the father, of part of the property conveyed in the deed of the 20th of October 1856. There was no truth in the statement of Henry Crowl to Thompson the conveyancer, when preparing the deed, that his wife was justly entitled to dower in the land which he had conveyed to his sons, "and in consideration of making this conveyance (that is, the deed of the 1st of June 1857) to her, she *would relinquish* her right of dower in that land;" because she had, by the agreement of the 20th of May 1857, between herself, her husband and his sons, *relinquished* all her claim and interest in that Frederick county land.

368          MARYLAND REPORTS.

Ellinger, *et al.*, *vs.* Crowl & Wife.—Crowl, *et al.*, *vs.* Crowl.

While the court has recognised the right of a wife, who has realised value for the transfer of her potential right of dower, to invest it in property in her own name, this court will require it to be shown that she had a potential right of dower to sell, and did so sell it for a valuable consideration, before it will allow such a defence to defeat the rights of creditors of the husband. Here the wife had no right of dower in the land in Frederick county, for that deed was executed on the 20th of October 1856, and she was not married till the 6th of November 1856. That deed was never set aside, and now stands as good in law. What right of dower then had she, which was worth $6000 of the property of her husband?

4th. If then this deed of the 1st of June 1857, was a voluntary one, it will hardly be questioned that it should be vacated. It is shown by the testimony of Israel Cooke, that while Henry Crowl set aside enough property to pay some $1400 of debts, which were all that he admitted to be due at the time, or before the making of this deed; that in truth his debts were near $4000. The testimony show salso, that he sold his life estate in all his other property. There is no other property to which the creditors can look for payment, except that mentioned in the deed of the 1st of June 1857. This deed, therefore, being voluntary, and the grantor having no other means wherewith to pay his debts, it should be set aside. 11 *Md. Rep.*, 198, *Williams vs. Banks.*

*J. Malcolm*, for the wife:

1st. The true consideration for the deed is shown by the evidence in these cases to be, the *relinquishment, by the wife, of her dower right,* in the valuable property of her husband, and that that consideration was *not* inserted by *the mistake of the conveyancer*, and so testified to by him, and such being the fact, she is entitled to the aid of a court of equity to have the mistake rectified, so as to protect her property from the attempts of her husband's creditors to lay hold of it. In all cases of this kind *the true inquiry is, whether the deed has been contrived for the purpose of defrauding creditors,* and if

it can be shown that it was not so designed, and the party is a purchaser for a *valuable consideration*, a court of equity will protect the wife's property from her husband's creditors. The cases of *Bowie vs. Berry*, 3 *Md. Ch. Dec.*, 359; *Snively vs. Beavans*, et al., 1 *Md. Rep.*, 223; *Unger & Wife vs. Price*, 9 *Md. Rep.*, 552; and 1 *Am. Lead. Cases*, 51; show that dower is a valuable consideration. And the cases of *Wesley vs. Thomas*, 6 *H. & J.*, 24; *Moale vs. Buchanan,* et al., 11 *G. & J.*, 314, and *Cooke vs. Husbands, et al.*, 11 *Md. Rep.*, 510, 511, show that the aid of a court of equity will be granted to reform, under such circumstances as are presented in these cases, and that a cross-bill was the proper mode to obtain the relief, see 1 *H. & G.*, 175, *Betts vs. Union Bank.* And that parol proof of the declarations of the grantor is admissible, as part of the *res gestæ*, having been made to the conveyancer at the time he was requested to draw the deed, see *McDowell vs. Goldsmith*, 6 *Md. Rep.*, 342, and *Powles vs. Dilley*, 9 *Gill*, 234. But in this case no exceptions were taken by the complainants to the admissibility of the parol evidence. 9 *G. & J.*, 91, *Clagett vs. Hall.* 7 *Md. Rep.*, 76, *Gibbs vs. Gale.* It is true that, if the parties *design* to express themselves in the terms of the deed they shall be bound by it, (2 *Md. Rep.*, 25, *McElderry vs. Shipley;* 6 *Md. Rep.*, 479, *Showman & Wife vs. Miller, et al.,*) but here they did not so *design;* there was a mistake in fact. All of the cases cited on the other side were cases in which was expressed the consideration the parties intended, but there was a mistake of law and *not of fact.*

2nd. The proof in the causes shows, that there was abundant means, not covered by this conveyance to the wife, to have paid all the debts of the husband, and, therefore, the relief sought by the creditors to vacate this deed, ought not to be granted. 5 *Gill*, 449, *Worthington, et al., vs. Shipley.*

Le Grand, C. J., delivered the opinion of this court.

The nature and substance of these cross-appeals may be thus set out: on the 18th day of August 1857, Ellinger, Barbee and Royston, in behalf of creditors, as well as them-

selves, filed their bill of complaint against Henry Crowl, and Agnes P. Crowl, his wife, alleging that they were his creditors, with others, prior to the 1st day of June 1857; that the amount due to them was $673.10; that at the time these debts accrued, Henry Crowl was possessed of a large estate, part of which was conveyed to his children; and that on the 1st day of June 1857, being so indebted, the said Crowl executed a deed to his wife, Agnes, of all his property in the city of Baltimore, as described in the deed; that the consideration stated in the deed, for which the same was executed, was, "for love and affection," and the "better to provide for the support and maintenance" of his wife, Agnes. The bill charges that the deed was fraudulent and void, in prejudice of subsisting creditors, and fraudulently made to hinder, delay and defraud the creditors of Henry Crowl: it also charges that, at the time of the execution of the deed, Crowl had no other property with which to pay his debts. The relief prayed for is, that the deed may be declared void and set aside, and the property sold for the payment of the debts of Crowl, and an injunction to restrain his wife Agnes from disposing of the property. In his answer Henry Crowl admits the allegations of the bill. His wife, under the permission given by the court, filed her separate answer, in which she does not admit the indebtedness of her husband, as alleged, but claims an interest in his property, by virtue of a marriage contract, alleged to have been once made, but since destroyed, and avers that, the true consideration for the deed to her from her husband, was that she united in a deed conveying certain property in Frederick county, to the children of her husband by a former marriage, clear of dower. Her answer denies the deed was made to hinder and delay creditors, but was for the *bona fide* consideration of her marriage to him, and the relinquishment of her dower right in his real estate. The answer refers, also, to a bill filed by Henry Crowl, to set aside a deed of his property in Frederick and Carroll counties, to his children, and its settlement by compromise.

On the 26th day of September 1857, Agnes P. Crowl, by her next friend, Edward Murray, filed her bill of complaint,

alleging her marriage with Henry Crowl on the 6th day of November 1856, and his promise to assign to her $10,000 worth of property, in consideration of her marriage, and the subsequent cancelling of that agreement, and admits the conveyance of $6000 worth of property by the deed of June 1st, 1857; that Henry Crowl had a large family of children, and an estate in Frederick county and city of Baltimore, worth some $30,000; that he was eighty one years old, and she but twenty-six. The bill refers to the deed of the land in Frederick county to his children, and the proceedings to set it aside; it denies that the consideration for the deed of June 1st, 1857, was natural affection, as therein stated, but was, in fact, in consideration of the marriage between Henry and Agnes Crowl, "and the relinquishment of her right of dower in and to the real estate of said Henry Crowl." The bill prays that the deed may be so reformed as to recite the true consideration, or that a new one may be given to her under the direction of the court. Referring to the preceding bill of complaint filed by the creditors of her husband, she prays for an injunction to restrain them from proceeding with that suit until the determination of her right to a reformation of the deed.

On the filing of each bill the court ordered an injunction to issue, as prayed. Testimony was taken, and, by agreement, the testimony was to be read and considered in both cases. At the final hearing, the court dismissed the bill of *Ellinger and others, vs. Agnes P. Crowl,* and dissolved the injunction; and in the other case, that of *Agnes P. Crowl, vs. Henry Crowl and others,* decreed that the deed of the 1st day of June 1857, be reformed, as prayed in her bill; and that Henry Crowl execute a new deed to her in conformity therewith, and that the injunction be made perpetual.

The indebtedness of Henry Crowl as alleged in the bill on behalf of the creditors is admitted.

The marriage of Henry Crowl to his wife Agnes took place on the 6th of November 1856.

The deed from Henry Crowl to his children of the property in Frederick county is dated the 20th of October 1856, sixteen days previous to the marriage.

There is a great deal of testimony in the record in regard to the declarations of Henry Crowl and others about the time of the marriage, and thereafter, as to what he had done and intended to do for his wife in the way of a marriage provision or settlement. Most of it is very loose and indefinite. Some of the witnesses testify there was a paper making the provision, and some of these witnesses state it to have been signed by Henry Crowl, whilst others of them declare it to have been without his signature. One of the brothers of Agnes Crowl (Francis Murray) testifies, that his and her father "said that the paper was of no value, and it was burnt up at the instance of the father;" another brother (Wm. Murray) testifies, that "Agnes and Henry Crowl were sitting by the fire talking the matter over, and they came to the conclusion to burn the paper, which they did."

There is enough disclosed in the evidence to justify the inference, that about the time of the marriage of Henry Crowl to his wife Agnes, he was unsettled in his understanding. One of the witnesses proves that only the day before his marriage he was "*then on a hunt for a wife*," stating that he would give to *any person* who would please him, his farm in Frederick county, which he valued at ten thousand dollars, a farm of which he, at that time, was not the owner. The great disparity in the ages of the parties, and their short courtship, when taken in connection with the supposed wealth of Henry Crowl, are not circumstances demonstrative of any great fervor of affection for the more than octogenarian, by his youthful spouse. Nor is the conjecture uncharitable that, a marriage under such auspices, partook of the character of a money speculation, and, if like other speculations, it has not turned out to be as agreeable and profitable as was hoped for, the disappointment must be borne as best it may be by the parties. Others, before them, have been balked in similar expectations.

Whatever equity Mrs. Crowl has, depends upon her making out that the real consideration for the deed to her of the first day of June 1857, was the relinquishment of her potential right of dower in lands conveyed by her husband, and

that it was not intended to defraud or hinder his creditors, but merely to fulfil, honestly, an obligation due from him to her.

There is no doubt that in cases of fraud and mistake, a court of equity will reform instruments of writing, so as to do justice and make them conform to the intentions of the parties, but this can only be done on clear and satisfactory proof. *Adams Equity, (marginal,)* 171. And, it is equally certain, that both marriage and dower are valid considerations for a contract. In reference to this, all the authorities are agreed. The only question in any case is, as to the manner and quality of the proof adduced to establish the essential ingredients of a good and legal contract, such as can be enforced. One of the rules of a court of equity is, that it will not alter a contract, in the absence of fraud and mistake, so as to make it different from what the parties intended. There is no evidence in this case that the deed of the 1st day of June 1857, is in any wise other than it was designed to be. There is nothing in the testimony of Mr. Thompson, the conveyancer, going to show that he had any instructions to draw the deed differently from what he did. He details a conversation which he had with Mr. Crowl, in which he informed him, that he could not deed property to his wife if he had not of other property enough to pay his debts. After assuring the witness that he had abundant means to pay all his debts, he tells him that he had conveyed to his children valuable property in Frederick and Carroll counties, for which he had received no consideration, *"and in which his wife was justly entitled to dower,"* and in consideration of making the conveyance to her she would relinquish her right of dower in that land. There is nothing in all this showing that the conveyancer made any mistake, or departed from the directions given to him; and it is evident, that he understood Crowl as meaning, that in justice she was entitled to dower in the property conveyed to her children by a former marriage, and not that there was any contract to that effect. The fact is, she had no right of dower, potential or otherwise, in the property. At the time of the marriage Mr.

Crowl had no interest in it, and she, of course, could acquire none in it by virtue of the marriage. The conveyance of the 20th of October 1856, which took the title out of him, has never been successfully impeached, and, for aught that appears to the contrary, it still remains unimpaired as a muniment of title. There is no fraud alleged in her bill against her husband. The consideration set up by her is denied by him, and is not sustained by the proof. The evidence shows that, the children did not recognize her as having any interest in the property which they held under the deed of the 20th of October 1856, and that they refused in the arrangement and compromise made with their father to convey any thing to her which she was desirous they should.

We deem it unnecessary to enquire, whether the declarations, under the circumstances they were made, of Crowl and others, which have been excepted to, be properly admissible. For, it is well settled in this State, as well as elsewhere, that parol proof is inadmissible to vary the kind of consideration stated in deeds. In the case of *Sewell vs. Baxter & Wife,* 2 *Md. Ch. Dec.*, 454, where an attempt, like the one in this case, was made to change the nature of the consideration, the chancellor very distinctly repulses it as unauthorized by the uniform adjudications of the courts of this State. The bill in that case, as the one in this, attacked the deed as fraudulent, and as intended to defraud and hinder creditors. And, as in the present case, the deed in that was simply voluntary, in consideration of love and affection. The grantee sought to sustain it by proof that, her father, (the grantor,) having received her money, "applied a portion of it towards the purchase of the lands mentioned in the deed," and "at the time of making the purchase, and frequently afterwards, told respondent, (the grantee,) that the deed should be given to her for said lands, with which arrangement she was satisfied." In regard to this the chancellor says: "To the evidence offered to support this view of the case, the complainant has excepted, and it appears to me, clear, upon the authorities, that it is inadmissible. The deed, upon its face is voluntary, the nominal consideration of five dollars mentioned in it, being

## JUNE TERM, 1861. 375

Ellinger, *et al.*, *vs.* Crowl & Wife.—Crowl, *et al.*, *vs.* Crowl.

introduced simply to give it the character of a bargain and sale, and the question, therefore, is, whether it is competent to the grantee in this deed, to show by parol, that it was not a voluntary settlement by her father upon her, but that the land conveyed to her by the deed, was purchased and paid for by her father, with her money. The decisions in this State are conclusive to show, that parol proof is inadmissible to vary the consideration stated in deeds, and thereby either to alter their character, or to maintain them when impeached for fraud, by showing considerations differing from those mentioned in them. The cases of *Wesley vs. Thomas*, 6 *Har. & Johns.*, 24; *The Union Bank vs. Betts*, 1 *Har. & Gill*, 175; *Wolfe vs. Hauver*, 1 *Gill*, 84; *Cole vs. Albers & Runge*, 1 *Gill*, 412, and the cases therein cited, place this question beyond all controversy." On appeal this decision was affirmed by the Court of Appeals, in 3 *Md. Rep.*, 334.

Whilst indebtment, at the time of executing a voluntary conveyance, is only *prima facie* evidence of fraud as to prior creditors, and whilst the presumption arising from such indebtedness may be repelled by proving that the grantor, at the time of the gift, was in prosperous circumstances, possessed of ample means to pay all his debts, yet such indebtedness is *prima facie* evidence that the deed is fraudulent as to creditors, and the *onus* is thrown upon the grantee, of establishing the circumstances which shall repel the fraudulent intent. 3 *Md. Rep.*, 334. No such evidence has been given in this case.

It follows, from these views, that, in our opinion, the decree passed by the circuit court in the case in which Agnes P. Crowl is complainant, is erroneous, and ought to be reversed, and her bill dismissed; and also that pronounced in the other case, in which Ellinger and others are complainants, ought to be reversed, and one passed making the property liable for the debts of Henry Crowl, existing on the 1st day of June 1857, and ordering a sale to that end, unless said debts be paid on or before a day to be named in the decree. Whatever shall remain after discharging the debts of Henry Crowl, which existed on the 1st day of June 1857, will, of course,

remain to Agnes P. Crowl, as her separate property. Decrees in both cases will be reversed, and the cause of Ellinger and others, vs. Henry Crowl and wife, remanded, that a decree may be passed by the circuit court in conformity with this opinion, and for further proceedings.

*Decrees reversed, and the cause of Ellinger and others, vs. Henry Crowl and wife, remanded for further proceedings.*

( Decided June 1st, 1860.)

On the 13th of June 1860, the solicitor for Agnes P. Crowl moved for a re-argument, upon the point that the testimony in the cause was sufficient to establish that there was enough property belonging to Henry Crowl, at the time he executed the deed, attacked by the creditors, and not embraced in and conveyed by it, to pay all the debts proven in these causes to be due by him. This motion the court granted, and the causes were continued, and the re-argument on this point was made before LE GRAND, C. J., TUCK, BARTOL, and GOLDSBOROUGH, J.

*Wm. Pinkney Whyte,* for the creditors:

Relying upon the points before argued, and in reply to the points upon which the counsel for the wife now depends, the creditors insist that the proof in these cases shows that while Crowl falsely represented his debts to be but $1400, when he gave to Cooke, as trustee for his creditors, property worth, in all, some $2200, yet the claims subsequently presented by his creditors amounted to $4000. The witness, Cooke, when examined in chief, gave in evidence the statement of Crowl, as to his indebtedness, and upon the cross-examination in relation to that indebtedness, he stated that the claims against him amounted to $4000. Although the appellee excepted to this testimony, yet, upon a re-examination, her counsel permitted the testimony to be received, that claims were presented to that amount. Now, though her counsel asks for an affirmance of the decree below, upon the ground that he has "shown $2200 to pay $673, more than three dollars for one of his indebtedness," the real truth is, that pending these

JUNE TERM, 1861.                    377

Ellinger, et al., vs. Crowl & Wife.—Crowl, et al., vs. Crowl.

proceedings in this court, the creditors of Henry Crowl have brought the trustee into court to account for all property belonging to Crowl in his, Cooke's, hands, and the same has been distributed under an order of the circuit court for Frederick county, on its equity side, and the fund only paid about eighty-five per cent. on the claims filed, exclusive of those of the creditors in these cases who did not file their claims. A copy of the auditor's account in that case is filed with this argument, in confirmation of the truth of this declaration, and the filing thereof is justified by the precedent allowed in *7 Md. Rep.*, 448, *State vs. Weighorst*, where the State's attorney was allowed to file certificates from the clerks of various criminal courts, showing the manner of entering verdicts, and this court permitted them to be read in proof of a practice in such courts. The deed, therefore, being a voluntary one, and indebtedness at its date proved on the part of the grantor, it is *prima facie* a fraudulent deed, and it is incumbent on the grantor to show, by clear proof, that he was in prosperous circumstances, and had ample property to pay his debts. 2 *Md. Ch. Dec.*, 455, *Sewell vs. Baxter & Wife*. 11 *Md. Rep.*, 227, *Williams vs. Banks*. There is, as has been shown, no such proof in the record.

*J. Malcolm,* for the wife:

The witness, Israel Cooke, in his testimony, says, that the personal property and fifty acres of land, *which he sold as trustee,* was sufficient to pay $1400, and that Henry Crowl's other property, outside of his land, was worth $2200. Mrs. Child's testimony proves that she purchased, after the bills were filed in these cases, Henry Crowl's life-estate from him for $500, in property which was then under rent at $52 per month. And the debts in these cases are only $673, against the property outside of the deed. None of this testimony *is excepted to,* whereas the testimony of Cooke is excepted to by Mrs. Crowl, so far as it relates to the indebtedness of Crowl, outside of Crowl's declarations, given in evidence by Cooke, and for the very reason given by the witness, that he does not know the amount of his own knowledge, but by

48      v.17

378 MARYLAND REPORTS.

Ellinger, et al., vs. Crowl & Wife.—Crowl, et al., vs. Crowl.

statements from others, whilst none of his testimony is excepted to by the creditors. Conceding then, for the sake of the argument, that Mrs. Crowl cannot show any other consideration than that expressed in the deed, nevertheless, this deed cannot be successfully attacked, because the claims proven amount to the sum of $673.22, with interest on $348.22, whereas the proof shows that the property outside of the deed to his children, in Carroll, was worth $2200, in addition to his interest in the property situated in the city of Baltimore. And taking Cooke's testimony as to what Crowl said was his indebtedness, even in that case there was more than sufficient in the trustee's hands to pay all that was due by Crowl, not to speak of the property in the city of Baltimore, for which he received $700 per annum, and which he finally sold to Mrs. Childs for $500. Now if these facts be true, and there is no proof to the contrary, there is no ground to set aside this deed, upon the principles laid down in the case of *Williams vs. Banks*, 11 *Md. Rep.*, 198, and the reasoning of the chancellor in *Bullett vs. Worthington*, which was adopted by the Court of Appeals, in that case, as the law of this State. And we have shown $2200 to pay $673, *more than three dollars for one of his indebtedness*, and are, therefore, entitled to an affirmance of the decrees below. The counsel for the creditors has no right to file a statement *not in the record;* for it is upon the record, alone, the case is to be tried, and the court cannot go behind or outside of it, for the purpose of ascertaining facts upon which its decision is to be made.

GOLDSBOROUGH, J., delivered the opinion of this court, on the re-hearing.

We adopt as correct the statement of the pleadings and evidence as made by the Chief Justice, and also his statement of the law as applicable to the case, but dissent from his view of the effect of the testimony. We are of opinion that the circumstances detailed in the proceedings, establish a valuable as well as a good consideration for the deed from Henry Crowl to his wife, Agnes, and also that at the time of

the making of the said deed, the grantor had property other than that mentioned in the deed, sufficient to pay all his indebtedness shown by this record. This being so, the deed cannot be successfully assailed by his creditors, and we therefore affirm the decrees of the circuit court.

*Decrees affirmed, with costs.*

(Decided Oct. 29th, 1861.)

Le Grand, C. J., dissented.