# Potter & Son *v.* Gracie.

### *Bill in Equity to set aside Fraudulent Conveyance.*

1.  *Conveyance; what void as to creditors.*—A conveyance to a mistress, or to her illegitimate child, though intended merely as a provision for maintenance, and not looking to future cohabitation, is void as against existing creditors.

2.  *Conveyance to mistress; what necessary to support* —To support a conveyance to a mistress, on the ground of valuable consideration, there must be clear and convincing proof of such consideration, to overcome the unfavorable inferences which the court would draw from the illegal relation existing between the parties.

3.  *Consideration; proof of different, from that stated in conveyance.*—If the conveyance itself recites that it is made on divers good considerations, and for kindness felt by the grantor towards the grantees, (the mistress and her child), parol evidence can not be received to show a valuable consideration.

4.  *Conveyance in fraud of creditors; for what purpose may be allowed force.*— When a voluntary conveyance, not tainted with actual fraud, is set aside in equity, at the instance of existing creditors, it will, nevertheless, be allowed to stand as a security to reimburse the grantee, for money paid by him in removing a valid incumbrance on the property.

5.  *Same; for what grantee must account.*—If the grantee has been put in possession of the property under the conveyance, the value of the use and occupation will be charged against him, and set off against moneys paid by him for taxes and insurance, and in removing prior incumbrances.

APPEAL from Chancery Court of Dallas.

Heard before Hon. CHARLES TURNER.

This was a creditor's bill, filed by the appellants, Lewis W. Potter and sons, and John Helton, against R. M. Nelson, administrator of James Johnston, Mary Gracie and William Gracie.    The object of the bill is to set aside a conveyance made on the 29th day of July, 1871, by James Johnston, in his life time, to Mary Gracie for life, remainder to William Gracie, her son, as fraudulent as to his creditors.    The bill alleged that complainants were creditors of Johnston before the making of the deed; that at the time of its execution Johnston was insolvent, and owned but little other property than that conveyed; that no money, or other thing of value, was paid by Mary Gracie, and that at the time of the making of the deed Mary Gracie was the kept mistress, or concubine, of Johnston, and continued to be so up to the time of his death; that the purpose of Johnston in making the deed, was "to induce Mary Gracie to live with him in a state of prostitution, and to continue to be and remain his kept mistress."

Mary Gracie answered, denying that Johnston was insol-

vent at the time of executing the deed, and averring the contrary. She also denied that there was no consideration for the deed, or that it was made to induce her to remain or live with him, as his mistress. She averred that, at and before the execution of the deed, Johnston was indebted to her, in a sum exceeding the amount paid for the lot, and that he purchased the lot at her request, with the money he owed her, taking title to himself, because the owner of the lot would not permit her (she being a colored woman) to become the purchaser; that the money paid by him was part of what was due her, and that in pursuance of his agreement to purchase for her, he made the deed to her and her son, which the bill assailed. This deed recites that it is made on divers good considerations, and for kindness the grantor feels towards Mary Gracie and her child Willie, or William. The answer also set up that she had made valuable improvements on the land, which was unimproved when conveyed to her; that at the time Johnston conveyed to her, there was an incumbrance on the lot for part of the purchase-money due by him, and that she had since paid off this mortgage; and that the lot would not sell for enough to reimburse her for the improvements and payment she had made to remove the incumbrances on it. She positively denied that the sale was made by Johnston with intent to hinder, delay or defraud his creditors, or that she received the deed with such intent, or knew of, or in any manner participated therein.

The evidence tended to show that Mary Gracie, who was formerly the slave of Johnston, had lived with him as his mistress for some time after emancipation, and that after she ceased to live on the same place with him, she frequently visited him, and he visited her, still continuing to cohabit with him until his death; that William Gracie was their child, born of such illicit intercourse soon after the war. The evidence, tending to show indebtedness of Johnston to her, was chiefly of loose declaration made by Johnston to the negroes on the plantation, where they lived, and her own testimony that he owed her for services rendered as his house-keeper, and had bought the lot for her in payment therefor. She introduced no written evidences of this indebtedness to her. She proved that she had paid the taxes and insurance on the property since she had been in possession, and it was also shown that she had paid off the mortgage given for the purchase-money. The carpenter, who built the house on the lot, testified that he contracted with and was paid by Johnston. The evidence tending to show that the consideration of the deed was the past indebtedness of Johnston to Mary Gracie, was objected to, because it tended to contradict the recitals of the deed.

On the hearing, the Chancellor dismissed the bill for want of equity, and this decree is here assigned as error.

MORGAN, LAPSLEY & NELSON, for appellants.

SUMTER LEA, and REID & MAY, contra.

BRICKELL, C. J.—A contract, the consideration of which is future illicit cohabitation, like all agreements to do acts forbidden by the law of God, or in furtherance of immorality, is utterly void. If it has been executed, no court of law or equity will, at the instance of either party, interpose to set it aside. The courts apply the maxim, "*In pari delicto, potior est conditio defendentis,*" abstaining from interference to enforce or to vacate.—Story on Con. 5543; *Black & Manning v. Oliver*, 1 Ala. 449; *Walker v. Gregory*, 36 Ala. 180. A contract or conveyance, in consideration of past cohabitation, intended or regarded as reparation, or indemnity for the wrong done, is treated at common law as founded on a *good* consideration. If executory, and under seal, the seal conclusively importing a consideration, it may be enforced; but if not under seal, a mere simple contract, the consideration of which may be impeached by plea and evidence, it stands on the same ground with other contracts or agreements, having only the performance of a natural or moral duty as a consideration to support them.—Story on Con. 541; Chitty on Con. 661-62; *Singleton v. Bremar* (Harper's Law), 201; *Binnington v. Wallis*, 4 Barn. & Ald. 650; *Marchiones of Annondale v. Harris*, 2 Peere Wm. 432; *Gray v. Matthias*, 5 Ves. 286. A conveyance to a mistress, or to her and her children, by way of gift or advancement, not looking to future cohabitation, intended merely as a provision for maintenance, cannot be sustained against existing creditors. It stands, as would any other conveyance, springing not from motives of justice, but from motives of affection, or generosity, or prudence. The claims of creditors rest on legal obligations, higher than the demands of affection, or generosity, commendable as may be a response to these, when there are not duties which the law declares paramount.— *Wait v. Day*, 4 Denio, 439; *Sherman v. Barrett*, 1 McMullan, 147.

It is not, perhaps, important to inquire whether the conveyance now impeached rests on a consideration of past or of future cohabitation. If the latter is its consideration, having been executed, it is valid and operative against the grantor, his privies in blood and in estate.— *Walker v. Gregory, supra.* If the former is its consideration, the conveyance is voluntary. It is the settled law of this State that a con-

[Potter & Son v. Gracie.]

veyance, not founded on a *valuable* consideration, is absolutely void as to the existing creditors of the grantor. No inquiry is indulged into the intent with which it is made. The intent is material only when the rights of subsequent creditors are involved. Then, if it is tainted with actual fraud, it is void.—2 Brick. Dig. 21, §§ 100-119. The complainants are creditors of the grantor, and their debts existed at the execution of the conveyance. As to them, the conveyance is void, because its consideration is not *valuable*. The inflexible rule of the law is, *that the man must be just before he is generous.* The claims of wife and children, of all who are bound by the ties of natural affection, and relations the law recognizes and favors, must yield to the paramount legal duty of the debtor to creditors. If these claims are subordinate, surely all claim which is the result of an immoral, illegal, meretricious connection, cannot stand on higher ground.

As is usual, and is to be expected in cases of this character, it is attempted to support the conveyance by evidence of a *valuable* consideration. Services rendered by the mistress, or a loan of money, for the payment of which no written evidence is taken, proved by the loose declarations of the grantor, made to witnesses having no interest to direct their attention to them, and no motive for preserving a distinct remembrance of them, have often been asserted as the consideration of conveyances, made between parties living in illicit intercourse. Criminal as may be their conduct, there is no legal inhibition against their contracting with each other, and if their contracts are not infected by the illegality of the relation—if they are supported by a *valuable* consideration, they will be upheld and enforced. The existence of the relation must excite the jealousy of the court called to inquire into the validity of the contract. If the character of the contract is such as would naturally spring from the relation, and is not such as would be expected, if it was founded on a valuable consideration, moving between the parties, as if they were strangers dealing with each other, clear and convincing proof of the consideration must be given to neutralize the unfavorable inferences the court would feel constrained to draw. For many years prior to the execution of this conveyance, the relation between the grantor and the grantee for life, was that of concubinage. Beginning while she was his slave, the remainderman was born of the illicit intercourse; after emancipation, it continued until his death severed it in 1873. There may be no evidence of a distinct agreement, when the conveyance was executed, that the relation should continue, yet it cannot be doubted its continu-

ance was contemplated, and there is no reason for suppos-
ing that, if its dissolution had been suggested, the grantor
would have executed the conveyance. Reparation for the
wrong he had inflicted, there is not a fact in evidence tend-
ing to show he intended. If he was penitent, and intended
to atone for the wrong, it is not apparent from any act or
declaration found in the mass of evidence in the record.
The character of the conveyance is, that to be expected from
the condition of the parties—a gift to the mistress for life,
with remainder to the child, the offspring of the cohabita-
tion. If a *valuable* consideration, a debt due to the mistress,
had been the consideration of the conveyance, it is not prob-
able she would have consented that her estate in the prem-
ises should be limited to her life; and if she died, the re-
mainder should have been limited to the son to the exclu-
sion of her after-born children, if any she had. Such limi-
tations are not usual in deeds of bargain and sale, into
which it is sought, by parol evidence, to convert this convey-
ance, when the consideration moves from one grantee to the
grantor. These are the limitations which would be expected
in a settlement upon a mistress and her illegitimate child.
Fraud, or illegality, is not presumed, it must be proved; and
often it is shown by circumstances, rather than by direct evi-
dence. The inferences which must be drawn from the rela-
tion of the parties, and the character of the conveyance, as
to its real consideration, must be repelled by clearer and
more convincing evidence of a valuable consideration than
that the appellees have introduced.

Without regard to the weight of the evidence, however, we
are constrained to declare that it was inadmissible, and could
not contradict or vary the consideration expressed in the
conveyance. The deed recites that it is made on *divers good
considerations, and for kindness,* the grantor *feels towards Mary
Gracie, and her child Willie or William.* A deed may be sup-
ported by a *good* consideration, or a *valuable* consideration.
If it rests merely on a *good* consideration, it is subordinate
to the rights of existing creditors, valid and operative against
the rest of the world; while a *valuable* consideration frees it
from impeachment, if it is not tainted with a fraudulent
intent. "A *good* consideration, is such as that of blood, or
of natural love and affection, when a man grants an estate to
a near relation, being founded on motives of generosity,
prudence and natural duty; a *valuable* consideration, is such
as money, marriage, or the like, which the law esteems an
equivalent for the grant, and is therefore founded in motives
of justice."—2 Black. 296-7. It is the settled law of this
State, that a deed impeached by creditors for fraud, actual

or constructive, cannot be supported by evidence of consideration different from those alleged in it.—*Murphy v. Br. Bank of Mobile*, 16 Ala. 90. It is at all times dangerous to relax the conservative principle of law, which declares that, when parties enter into a contract and reduce its stipulations to writing, the written memorial is the sole expositor of the contract, and cannot, in the absence of fraud, be waived by parol evidence. Mistake may occur, requiring a court of equity to intervene and correct, so that the contract may conform to the intentions the parties proposed expressing. But without fraud or mistake, as between the parties, the written contract is conclusive. When assailed by creditors, it must be taken as to the parties to it, as it may be written. It can not be supported by falsifying express recitals, which it must be presumed were deliberately made and deliberately accepted.— *Watt v. Grove*, 2 Sch. & Lef. 500; Bump on Fraud. Con. 557.

In courts of law, if an instrument is avoided for fraud, or illegality, it becomes a mere nullity. In equity, it may stand as a security for advances which have been made, or liabilities which have been incurred, in consequence of it, if, under all the circumstances, it would be right and just it should stand.—*Clements v. Moore*, 6 Wall. 299; *McMukin v. Edmunds*, 1 Hill Ch. 294; *Boyle v. Donald*, 1 Greenl. Ch. 478. The mortgage to Weaver was an incumbrance on the premises, at the time the conveyance was executed. If this mortgage was satisfied by the grantee for life, after the execution of the conveyance, with moneys not derived from, or furnished her by the grantor, she has an equity to be substituted to the rights of the mortgagee.—Bump on Fraud. Con. 574. The complainants demanding equity, must render it to their adversary. They would not render it, if allowed to subject the property to the payment of their debts, freed from the mortgage which was a prior incumbrance on the premises. If that mortgage was extinguished by the appellee from her own means, her intent was to perfect the title, she and her child acquired by the voluntary conveyance, which is not tainted with an actual intent to defraud creditors, but is void only by operation and construction of law. The equity of the complainants is to subject the premises in the condition in which they were, when their grantor executed the conveyance assailed—they are without equity, to avail themselves of the incumbrances, the grantee may have removed, or to take from her without compensation, the benefit of such incumbrances.

The evidence does not satisfy us, any improvements were made by the grantees, except from moneys furnished by the

grantor, after the conveyance was executed. It is not necessary, therefore, to determine, whether if any had been made, compensation for them can be claimed.

The premises have been in the occupancy of the grantee, since early in 1871. The value of the use and occupation, from the filing of the bill, to the day of the sale of the premises, as hereinafter directed, must be ascertained, and set off against the money expended in satisfying the mortgage to Weaver, and against the taxes, and insurance on the premises the grantee for life may have paid, since the bill was filed.

The decree of the chancellor must be reversed, and the cause remanded for proceedings in conformity to a decree which will be here rendered.

It is ordered, adjudged and decreed, the deed from James Johnson to Mary Gracie, for life, remainder to her son Willie or William, of date July 29, 1871, conveying the premises therein described, and described in the original bill, is void as against complainants, and all other creditors of the said James Johnson, whose debts were existing at the date of said deed.

It is further ordered, adjudged and decreed, that the register of the fifth district, of the middle chancery division of the State of Alabama, will sell the said premises, at public outcry, to the highest bidder for cash, at the court-house door, or some other suitable public place, in the city of Selma, having first given thirty days notice of the time, place and terms of sale, by advertisement in some public newspaper printed in the said city of Selma. He will make the purchaser, on payment of the purchase money, a conveyance of the premises, and will put the purchaser in possession, and will report said sale to the court for confirmation.

It is further ordered, adjudged and decreed, that the register take and state an account of the debts due and owing the complainants respectively, from said James Johnson, described in the original bill, computing interest thereon, to the day of taking said account.

It is further ordered, adjudged and decreed, that the register take and state an account of all monies paid by the respondent, Mary Gracie, from her own means, and not from means or monies furnished her, or by her derived from James Johnson, in satisfaction of the mortgage, executed by said Johnson to Ann P. Weaver, computing interest on each of said payments to the day of taking said account. And the register will also take and state an account of all taxes assessed on the said premises, after the filing of the original bill, and of all insurance thereon, after the filing of said bill,

[Brown, Adm'r; v. Walter et al.]

which have been paid by the respondent, Mary Gracie, computing interest from the day of such payments respectively, to the day of taking said account.

It is further ordered, adjudged and decreed, that the register take and state an account of the value annually, of the use and occupation of said premises, from the day of the filing of the original bill, to the day of the sale of the said premises, computing interest on the value of each year's occupation, from the end of the year, to the day of taking said account.

It is further ordered, adjudged and decreed, the value of such use and occupation, so ascertained, shall be set off against the amount ascertained to be due the respondent, Mary Gracie, for payments made by her in satisfaction of the said mortgage, and of taxes and insurance.

It is further ordered, adjudged and decreed, that if there shall be a balance due the respondent, Mary Gracie, on taking the said accounts, such balance shall be first paid from the proceeds of the sale of said premises, after deducting the costs of this suit, and the expenses of said sale, and the balance of such proceeds shall be applied to pay the debts due and owing the complainants, as ascertained by the register. If such balance will not pay the whole of said debts, then it shall be applied to them in proportion to their respective amounts.

All other questions are reserved for the decision of the chancellor. In taking the several accounts, the register will use the depositions already taken, so far as relevant, and such other evidence, as is on file, and may examine, orally, such witnesses as the parties may produce.

The register will report his action, under this decree, to the chancellor, for confirmation.

The respondent, Mary Gracie, must pay the costs of this appeal.