# Hubbard *et al. v.* Allen.

## *Fraudulent Conveyance.*

1. *The recital of a deed is not evidence against a creditor of the grantor.* In a controversy between the grantee and a creditor of the grantor, relative to the validity of the conveyance, its recital of the consideration is merely an admission of the grantor, and is not evidence against the creditor.

2. *In such a contest the onus of proving the value and adequacy of the consideration is upon the grantee.*—In such a contest the *onus* of proving that the conveyance was founded on an adequate and valuable consideration, is cast upon the grantee; and without regard to the motives of the parties in its execution, as to the rights of existing creditors, the deed will be presumed to be fraudulent until the contrary is shown.

3. *Evidence of a consideration different in kind from that expressed is inadmissible.*—Although the nature of the consideration may not be changed, any consideration of the same kind, and not inconsistent with that recited, may be proven; and if it be adequate, will support the conveyance.

4. *The sufficiency of proof is affected by the relationship of the parties.* If the grantor's creditors assail a deed, the sufficiency of proof of the consideration will depend on the relationship of the parties; on the circumstances when the transaction was made, and their subsequent conduct: and if a connection by blood, or marriage, be shown, clear and more convincing proof will be demanded, than would be required in its absence.

5. *A parol gift of land is void.*—A parol gift of land made by a parent to his child is void, and confers no right that can be enforced either at law or in equity. If, subsequently, a deed be executed in consummation of the gift, it is voluntary; it takes effect from the time of its execution, and can not prejudice the rights of existing creditors.

6. *A judgment for an honest debt obtained for a fraudulent purpose is void.*—A judgment may be obtained on an honest debt, and yet recovered and used for a fraudulent purpose. If it should be so obtained and used, it would be void as to all persons whose rights are prejudiced, and who are in a position to assail it.


APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. HURIOSCO AUSTILL.

Martha Jane Allen, a married woman, by her next friend, Hassan N. Allen, filed her bill of complaint in the Chancery Court of Montgomery county, against William Taylor, Sam—

uel D. Hubbard, Jr., Mary T. Hubbard, Charles R. Hubbard and Caroline Gilmer, for the purpose of setting aside and vacating the conveyances of the real estate therein described.

The complainant alleged that she and her husband, Hassan N. Allen, instituted suit in the Circuit Court of Montgomery county, on the 22d day of September, 1866, against William Taylor and Francis M. Gilmer, Jr., to recover the amount due on a promissory note executed by them on the sixth day of July, 1860. At the January term, 1868, of the said court a judgment by default was rendered in favor of the plaintiffs for the sum of four thousand four hundred and ninety-seven 60-100 dollars. This was the amount then due on the said promissory note, and was a part of the statutory separate estate of the complainant. On the 25th day of March, 1868, a writ of *fieri facias* was issued by the clerk of the Circuit Court, which was satisfied as to costs only, and returned by the sheriff "by operation of law under General Order No. 6, April 3d, 1868, of Major General Wager Swayne, of the United States Army." Other writs of execution were issued from time to time, which were returned without being executed, until the 29th day of March, 1869, when the sheriff returned the writ issued on the ninth day of March, 1869, with the endorsement upon it of "no property found."

The complainant also averred, "on information and belief, that on, to-wit, the fourth day of February, 1868, the said William Taylor being insolvent, and with the intent to hinder, delay and defraud his creditors of their lawful demands against him, did make, execute and deliver to his son-in-law, Samuel D. Hubbard, Jr., a deed of conveyance of the following described property, to-wit: Lots numbered eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen and twenty, together with a portion of lots numbered twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, and twenty-six, on the north end of said lots not heretofore deeded, all in square eleven, in that portion of the city of Montgomery known as Whitman's plat, fronting on Perry street, and running back three hundred feet to Lawrence street; also, five head of mules, one horse, twelve head of cattle, three thousand bushels of corn, twenty-five thousand pounds of fodder, all the hogs and farming implements now being used by the said William Taylor in cultivating the plantation seven miles south of Montgomery, known as the estate of A. C. Taylor Place—

all of which property is in the county of Montgomery and State of Alabama."

The complainant alleged that the conveyance was made for the purpose already stated, and "with the further and specific intent of preventing the lien of the complainant's judgment, which was rendered on the day succeeding the execution of the said deed, from attaching to the property described in said conveyance, and to hinder, delay and defraud the complainant of her said judgment." The sum of seven thousand dollars recited as the consideration of the conveyance was alleged to be "simulated," and a grossly inadequate price for the property conveyed. And that notwithstanding the said conveyance, the said William Taylor continued to reside upon, and retain possession of, the property conveyed.

The complainant alleged, that after the execution of the said deed of conveyance, the said William Taylor transferred to the said Hubbard certain bonds of the Montgomery Mining and Manufacturing Company, upon which bonds the said Taylor was an indorser. This transfer was made in order to enable Hubbard to institute suit against Taylor upon them; to recover a judgment against Taylor, and to subject the property "herein before mentioned to the satisfaction of such judgment, and thus prevent such property from being subjected to the payment of the honest debts of the said Taylor. The said Hubbard, colluding with said Taylor in his fraudulent intent aforesaid, and in execution thereof, commenced suit on said bonds and coupons against said Taylor individually in the City Court of Montgomery on, to-wit, the 18th day of September, 1871; that said cause came on to be tried at the October term, 1871, of the said City Court of Montgomery; the said Taylor employed an attorney to appear for him therein, that it might appear a trial was had and a verdict was rendered in favor of said Hubbard; and said attorney was employed by said Taylor for the further purpose of relieving said Hubbard of the necessity of making any proof in said cause; and on the ninth day of October, 1871, a judgment was rendered in said cause, by consent of said Taylor's attorney, as upon a verdict without any proof being introduced or any trial being had."

The complainant further alleged "that the said Samuel D. Hubbard, Jr., has had an execution issued on said fraudulent judgment, and had the same levied by the sheriff of this county on a portion of the property conveyed by said Taylor to him, as herein before stated, notwithstanding that said

property or any part thereof, has never been conveyed by said Hubbard to said Taylor, and caused said property to be advertised for sale on the 20th day of May, 1872, at public outcry."

In an amended bill, the complainant alleged, "that Paul Strobach, as sheriff of this county, proceeded on the 20th of May, 1872, to sell a part of the property mentioned in the said original bill, to-wit: Lots numbered eleven, twelve, thirteen and fourteen, on Perry street, in the city of Montgomery, under an execution issued upon the judgment of said Samuel D. Hubbard, Jr. At the time of the said sale, it was publicly announced by the attorney of the complainant, that a bill of complaint had been filed for the purpose of subjecting the said property to the payment of the complainant's judgment above described. Charles R. Hubbard, Esq., was present, and purchased the property for the sum of six hundred dollars, which is alleged to have been "grossly inadequate, as the said property is reasonably worth six thousand dollars, or other such large sum."

The complainant further averred, that since the deed of conveyance was executed by "the said Taylor to the said Hubbard, the said Hubbard has mortgaged a portion of said property to one Caroline Gilmer, to-wit—on the second day of May, 1870—which said mortgage is also signed by M. T. Hubbard, the wife of said Samuel D. Hubbard, Jr., for the purpose of relinquishing her dower interest in said property, and that at the time said mortgage was executed, the said Caroline Gilmer had notice of the existence of your oratrix's said judgment and its lien upon said property, and also that the pretended title of said Hubbard to said property was acquired by fraud as herein stated."

The bill of complaint prayed "that your honor will decree the deed of conveyance from said William Taylor to said Samuel D. Hubbard, Jr., and said judgment in favor of said Hubbard against said Taylor in said City Court of Montgomery, and said mortgage from said Samuel D. Hubbard, Jr., and M. T. Hubbard to said Caroline Gilmer, to be fraudulent and void, and that your honor will decree your oratrix's judgments to be a lien upon said property, and that the same, or so much as may be necessary therefor, be sold by the register of this court to satisfy the said judgment of oratrix, with costs, and interests and expenses of said sale," &c.

The defendants denied that the deed of conveyance was made by said Taylor to the said Hubbard on the fourth day

[Hubbard v. Allen.]

of February, 1868, but alleged it was executed on the fourth day of January, of that year, and was then filed for record in the office of the judge of probate of Montgomery county; they denied that the said William Taylor retained possession of the said property after he executed the conveyance to the said Hubbard, or that the consideration was "simulated," or grossly inadequate for the property, or that it was worth $20,000; they "aver the said Samuel D. Hubbard has had and held possession of said property, residing upon the real estate therein conveyed ever since the making of the said deed, and yet does; and the said William Taylor, who is old and infirm, and father of said Samuel D. Hubbard, Jr.'s wife, and who is without a family, has lived and boarded with the said Samuel D. as a guest."

The defendants denied that the bonds of the Montgomery Mining and Manufacturing Company, indorsed by the said William Taylor, were in his possession; or that he transferred them to the said Samuel D. Hubbard, Jr., with the intent to delay, hinder and defraud his creditors, or for any other purpose whatever; or that the said Taylor ever owned the said bonds or had any interest in them. They allege that the said Samuel D. Hubbard, Jr., on his own account and for himself bought "the said bonds from the true *bona fide* owners thereof, and that such purchase was a genuine *bona fide* business transaction, made with no intent to delay, hinder or defraud the creditors of the said William Taylor."

The defendants admitted that said Samuel D. Hubbard, Jr., instituted a suit against said William Taylor on the said bonds and coupons, and recovered a judgment against said Taylor at the October term, 1871, of the City Court of Montgomery, for the sum of $27,614.30, which still remained unsatisfied. An execution was issued by the clerk of the City Court of Montgomery on the 18th day of December, 1871, and placed in the hands of the sheriff of the county. The sheriff, on the 18th day of January, 1872, returned the said *fi. fa.* with the endorsement, "no property found."

Afterwards, on the 12th day of April, 1872, another writ of *fieri facias* was issued by the said clerk, and was received by the sheriff of the county, and by him was levied on lots eleven, twelve, thirteen and fourteen, in square eleven, in Whitman's plat, east side of Perry street, in the city of Montgomery, as the property of William Taylor.

"The said Samuel D. Hubbard, Jr., further answering, says that he caused said lots to be levied on and advertised for

sale, and afterwards sold under the advice of his attorneys for the following reasons, viz.: Before the execution of said deed of bargain and sale, the said William Taylor, who is the father to said Mary T. Hubbard, wife of this defendant, had made a deed of gift to the said Mary T. Hubbard of said four lots, by which this defendant is advised the legal title to said four lots passed from said William Taylor to Mary T. Hubbard; but by some proceeding they could be made subject to the debts of said William Taylor, contracted before said deed of gift was executed. The title having passed out of said William Taylor by said deed of gift to Mary T. Hubbard, it was doubtful if the deed of the said William Taylor to this defendant, made on the fourth of January, 1868, conveyed to him a sufficient legal title."

The defendants admitted the execution of the mortgage to Caroline Gilmer, and alleged the said notes and mortgage were executed for the purchase of some of the said bonds from said Caroline Gilmer, on which said judgment of Samuel D. Hubbard, Jr., against William Taylor was recovered. Said Caroline Gilmer, "before and up to the time of the said sale, was the owner of the said bonds; and the said Taylor had no interest therein."

The defendants denied that "said Charles R. Hubbard had read the bill of the complainant, or knew of its contents when said sale was made. They allege that by said purchase on the 25th day of May, 1872, and by force of a deed then executed by said sheriff to said Charles R. Hubbard, conveying said lots to him, which conveyance was then duly executed and delivered, and the purchase-money paid by said Charles R. Hubbard, he became, and was, possessed of all the right and title of said William Taylor which could be sold under the said judgments and executions." They denied that the "lots were worth $6,000, or that the price at which said lots were sold was grossly inadequate; and deny all fraud with which they are charged."

In addition to the answer made by all of the defendants, Samuel D. Hubbard, Jr., and Mary T. Hubbard, his wife, filed their cross-bill. They allege that William Taylor was a man of large fortune, and that even after the war his property was estimated at $500,000. He did not know as late as 1868 and 1869, that his indebtedness exceeded a trifling sum in comparison with his wealth. But that afterwards very heavy liabilities were fixed upon him as a member of a partnership in which he "was not an active or managing partner, nor did he know its financial condition."

[Hubbard v. Allen.]

The said William Taylor advanced to his children when they arrived at maturity or married, property valued at about $25,000. "The advancements made by him to the last of his children, except your oratrix (who is the youngest), was made in the year 1858, when his wealth remained unimpaired, and he then by verbal declaration and oral gift set apart for your oratrix four hundred acres of land, and ever afterwards regarded it as hers. He made no title to the same until after the marriage of your orator and oratrix. When your orator, having contracted to sell said land, the said William Taylor, at the request of your orator and oratrix conveyed said land to the purchaser, and the sum and its proceeds have ever since been enjoyed by your orator and oratrix.

"Your orator and oratrix intermarried in October, 1865. Mrs. Taylor, the wife of William Taylor and mother of your oratrix, owned a separate estate, and died intestate in 1866. Before the marriage of your oratrix, her mother gave to her several valuable birth-day presents in money, derived from her estate. These sums your oratrix lent to said William Taylor, and held his note therefor, amounting to eleven or twelve hundred dollars. At the death of her mother, your oratrix became entitled to a considerable sum, inherited from her mother; but the precise sum she is unable to state. This was in the hands of the said William Taylor, her father; and having confidence that he would do her no wrong, she did not bring him to a strict settlement.

"Shortly after the marriage of your orator and oratrix, the said William Taylor made some estimate of what he was indebted to your oratrix for the use and rents of her land so set apart for her in 1858, and of which he had the use for six or seven years; and the result was that he found himself indebted to your oratrix in the sum of five thousand dollars, for which he gave his note.

"Between the marriage of your orator and oratrix, and the fourth day of January, 1868, your orator lent and paid for said William Taylor several considerable sums of money, the precise amount not remembered. Said Taylor had also paid to your orator, on account of said indebtedness to oratrix, some railroad stock, from which he realized $2,500 or $3,000. And on the 4th day of January, 1868, there was due from said William Taylor, to your orator and oratrix, a large sum, including interest, to-wit, the sum of about $15,000.

"The said William Taylor advanced to your oratrix about

the 11th day of September, 1866, four vacant lots in the city of Montgomery, numbered eleven, twelve, thirteen and fourteen, in square eleven, Whitman's plat, worth about $1,500. He next advanced her a note of James M. Taylor for $5,800, with a mortgage on land, given to secure its payment. The said James M. Taylor soon afterwards died insolvent, and the land is not worth exceeding $3,000. He had no other property.

" The said William Taylor, still being largely indebted to your orator and oratrix, he made and executed the deed bearing date January 4th, 1868, mentioned in the original bill in this cause, on the recited consideration of $7,000, the full value of the property conveyed. This was in part payment of the $15,000 due from said William Taylor to your orator and oratrix. All these several advancements and payments were made in good faith; and, taken at the highest estimate placed upon them, they fall short five thousand dollars and more of making your oratrix equal with the advancements made by the said William Taylor to his older children."

The complainants in the cross-bill also averred that lots numbered eleven, twelve, thirteen and fourteen, in square eleven of Whitman's plat, were levied on by the sheriff to satisfy executions, issued on the judgments above mentioned. The lots were sold on the 20th of May, 1872; " and Charles R. Hubbard became the purchaser, for the sum of $600, and received the sheriff's deed therefor. The proceeds, $500, after paying costs, were applied as a credit on the execution issued in favor of" said Samuel D. Hubbard, Jr. " Subsequently, on the 24th day of May, 1872, your orator, being advised that it was doubtful if said advancement of said four lots was valid against debts of said William Taylor existing at and before the date of such advancement, paid to said Charles R. Hubbard, all the money he had paid in such purchase, all expenses he had paid and incurred, and all proper charges; and having entered a credit of $1,400 on said judgment, redeemed said lots eleven, twelve, thirteen and fourteen from said Charles R. Hubbard, and received from him a deed of conveyance."

The said cross-bill prayed " that the title to the said several pieces of property be quieted; and that Hassan N. Allen and Martha J. Allen, their aiders and abettors, be enjoined from molesting orator and oratrix in the enjoyment of said property."

The complainant, Martha J, Allen, moved to strike from

the files of the court the said cross-bill, on the following grounds, viz:

1st. "Said cross-bill was filed after the said Mary T. Hubbard and Samuel D. Hubbard, Jr., and all the defendants to the original bill, had answered the original bill of complaint, and after the publication of testimony in said cause, and no leave of court was obtained therefor.

2d. "The said Mary T. Hubbard and Samuel D. Hubbard, Jr., have no right to file said cross-bill at this stage' of the proceedings in said cause, without first obtaining leave of the court, and the filing of the same will cause unnecessary delay and expense in said cause."

The foregoing motion was heard by the court and overruled.

The complainant, Martha J. Allen, then filed an answer to the said cross-bill, and demurred to it on the following grounds, viz:

1st. "Said cross-bill fails to show or set forth any fact or facts which entitle the complainants therein to the relief they seek thereby, or to any relief.

2d. "Said cross-bill makes an entirely new case.

3d. "Said cross-bill is inconsistent with the answers of the complainants therein.

4th. "Said cross-bill is repugnant to the answers filed by said Samuel D. Hubbard, Jr., and the said Mary T., to the original bill.

5th. "Mrs. Caroline M. Gilmer, one of the defendants to the original bill, is a necessary party to the said cross-bill, and is not a party thereto.

6th. "Said cross-bill seeks to contradict and vary by parol proof the term of a written deed of conveyance.

7th. "Said cross-bill seeks to set up and establish a different and distinct consideration for the deed of January 4th, 1868, from said Taylor to said Samuel D. Hubbard, Jr., from that mentioned in the said deed itself.

8th. "It appears in and by said cross-bill that said complainants are estopped from seeking the relief they therein seek.

9th. "It appears from said cross-bill that the said deed of January 4th, 1868, from said Taylor to said Samuel D. Hubbard, Jr. is fraudulent and void.

10th. "Said cross-bill is without equity."

On hearing of the cause it was "ordered, adjudged and decreed, that the said William Taylor pay to the said complainant, or her solicitors, within thirty days from this date,

the said sum of seven thousand four hundred and seventy-nine 55-100 dollars, with interest from date of the date of said report of the register, to-wit, May 16th, 1876.

"It is further ordered, adjudged and decreed, that the judgment obtained by said Samuel D. Hubbard, Jr., against the said William Taylor, at the October term, 1871, of the City Court of Montgomery, for the sum of twenty-seven thousand six hundred and fourteen 30-100 dollars, and all proceedings taken thereafter by said Samuel D. Hubbard, Jr., as shown by the pleadings and proof in this cause, be, and the same are, hereby set aside and vacated as against complainant in this cause.

"It is further ordered, adjudged and decreed, that the sale of the property made by the sheriff of Montgomery county on said judgment, and the deed made by the said Charles R. Hubbard to said Samuel D. Hubbard, Jr., on the 24th day of May, 1872, of the property purchased by said Charles R. Hubbard at said sale, and the redemption of said property by said Samuel D. Hubbard, Jr., from said Charles R. Hubbard, be, and the same are, hereby set aside and vacated as against the said complainant.

"It is further ordered, adjudged and decreed, that the said deed executed by the said William Taylor to said Samuel D. Hubbard, Jr., on the fourth day of January, 1868, by which he conveyed the property 'heretofore described' to the said Samuel D. Hubbard, Jr., and said deed of September 11th, 1866, from said William Taylor to said Mary T. Hubbard, be, and the same are, hereby set aside and vacated as against said complainant. And that in default of payment by said William Taylor to complainant of the amount herein before mentioned, and within the time prescribed, the register of the court, after giving notice as prescribed by law, will proceed to sell, at public outcry, at the Artesian basin, in the city of Montgomery, Alabama, for cash, the real property described in said deed of January 4th, 1868, or so much thereof as may be necessary to satisfy the complainant's said demand, the costs of this suit, and the expenses of this sale," &c.

DAVID CLOPTON, for appellants.—1. Such a conveyance as that of Taylor to Hubbard will be upheld if it be an actual sale at a fair and reasonable price, and no secret trust or benefit is reserved to the grantor, although both parties may know that the grantor is otherwise indebted, and such sale will leave him unable to pay the other debts. To render a

[Hubbard v. Allen.]

transaction of this kind fraudulent, there must be some inter-
est left to the debtor, some reservation inconsistent with a
true sale, some cloaking of the surplus, so as to cover it up
for the benefit of the debtor of his family, or some secret
trust or reservation of advantage to the debtor.—50 Ala.
213; 21 Penn. (St. Rep.) 495; 61 N. Y. 626; 20 N. J. Eq.
13; 4 Halst. 139; 5 B. Monroe, 298; 39 Texas, 544.

2. In such a transaction, the *bona fides* of the considera-
tion and its sufficiency being established, the only remaining
inquiry ordinarily is, was there any reservation of any use,
benefit or interest whatever to the debtors?—Authorities,
*supra*, 29 Ala.; 34 Ind. 49. An inference of fraud can not be
drawn from the price paid, unless the property should be sold
below the market value, or price, so much as to strike the
understanding at once with the conviction that such a sale
could not have been made *bona fide*. This inadequacy is
necessary, *per se*, to authorize a sale to be annulled, or an
inference of fraud. A less degree may be a mark of fraud,
but other circumstances must be associated with it.—11 Ala.
484; 8 Ala. 104, 117.

3. As to the purchase of the bonds and suit thereon. The
charter of the company in evidence, shows the corporation
had no authority to borrow money.—31 Ala. 76; 35 Ala.
323; 36 Ala. 313. There was no necessity for, or propriety
in, suing the maker.—Rev. Code, § 1854; 1 Brick. Dig. p.
279, §§ 380, 385, 388. The depositions of Hubbard and
Bibb state the transaction as to these bonds, and of C. R.
Hubbard as to the circumstances of the suit and judgment.
Taylor says he had no defence to the bonds, was president of
the company and knew of their issue and non-payment, and
he requested that Mr. McIntyre should see that the calcula-
tions were correct. There is not the pretence of any fraud
in this transaction.

4. In this case the oath to the answer was waived; but
for the purpose of proving fraud, the complainant examined
twice both Taylor and Hubbard. They were her witnesses;
she may prove they *were mistaken*, which she has not at-
tempted to do, but she will not be allowed to discredit them.
1 Greenl. Ev. § 444; 22 N. Y. 151; 4 Gray, 535. In *Mar-
shall v. Croom*, 52 Ala. 554, it is said the sworn answer of
defendant " is equal to the testimony of any other witness;
and as the plaintiff can not prevail unless the balance of proof
is in his favor, he must either have two witnesses or some
circumstances in addition to a single witness in order to turn
the balance." *A fortiori*, how much stronger proof will be

required to turn the balance in favor of complainant, when the only two witnesses whom she has examined to show the fraud deny it *in toto,* and whom, in order to succeed, she must convict of perjury, after having, by their examination, vouched for them as credible witnesses? The complainant being forced by the law to stand by the case made by her own testimony, there is no pretence for holding there was fraud in this case.—64 Me. 239; 5 T. R. 235; 33 Ala. 469; 4 B. Mon. 296; 4 ib. 423.

BRAGG & THORINGTON, for appellee.—1. Section 1865 of the Revised Code is established for the suppression of fraud, the advancement of justice and the promotion of the public good; consequently it should be liberally construed to suppress fraud, abridge the mischief and enlarge the remedy. Bump on Fraud. Conv. p. 59, and authorities in note 4.

2. The withering influence of the statutes extends to all feoffments, gifts, grants, judgments and executions; and the principles of the common law will embrace every principle not enumerated in the statute.—Bump on Fraud. Conv. pp. 273–4 and 259. Equity looks at substance and not at form. "It penetrates beyond externals to the substance of things, and it accounts as nothing, and delights to brush away barricades of written articles and formal documents, when satisfied that they have been devised to conceal or protect fraud."—4 Bankr. Reg. (2 ed.) 290.

3. Fraud, as denounced in equity, includes all acts, omissions or concealments which involve a breach of a legal or equitable duty, trust or confidence justly reposed, which are injurious to another, or by which an undue and unconscientious advantage is taken of another.—2 Ala. 593. Fraud is the judgment of the law on facts and intents.—5 Ala. 531; 11 Ala. 207. But fraud does not necessarily impute a corrupt or dishonorable motive; parties may be animated by motives of affection or compassion. — Bump on Fraud. Conv. 72.

4. Actual fraudulent intent need not be shown—the intent is to be assumed from the acts of the parties; the motives which actuate men in the affairs of life can in general be ascertained only by an examination of their acts, and all the concomitant circumstances.—Id. pp. 281–2–3. As a general rule, great latitude is allowed in the range of evidence when the question of fraud is involved. It is indispensable to truth and justice that it should be so; for it is hardly ever possible to prove fraud, except by a compre-

hensive and comparative view of the actions of the party to whom fraud is imputed, and his relative position a reasonable time before, and a reasonable time after, the time at which the act of fraud is alleged to have been committed. 25 Ala. 174; Bump on Fraud. Conv. pp. 541–551; 5 Ala. 324; 23 Ala. 801.

5. The intent to hinder and delay is sufficient to vitiate the deed.—Bump on Fraud. Conv. pp. 66 and 67 and note 1; 41 Ala. 163. The term *delay* refers not merely to *time*, but to the interposition of obstacles in the way of creditors with the fraudulent intent to hinder and delay.—Bump. on Fraud. Conv. p. 67. Conveyances executed under whatever pretence, by an individual unable to pay his debts, will be held presumptively void as against creditors in the hands of a grantee who had knowledge of the facts.—23 How. 477; 20 ib. '45; 6 McLean Rep. 23. *If part of the consideration* for a transfer is merely nominal or colorable, contrived to hinder, delay or defraud creditors, the whole transfer is void. Bump on Fraud. Conv. 470; 14 Ala. 557; 41 Ala. 242.

6. Proof by the creditor that the consideration mentioned in the deed was never in fact paid, and that the deed is *only a gift,* is competent.—2 Ala. 648. And this, although it recites a valuable consideration as an inducement to its execution.—12 Ala. 18. When a conveyance is made with the intention to hinder and delay a creditor in the collection of his debt, it is void as against the creditor, although a valuable consideration was paid.—41 Ala. 173; 38 Ala. 329; 30 Ala. 396; 15 Ala. 525; 14 Ala. 557; 11 Ala. 207–213; 3 Stew. 243. If the conveyance is for a valuable consideration it must also be *bona fide,* and if it is not, it is void. Bump on Fraud. Conv. 230; 41 Ala. 168; 8 Ala. 104; 6 Wall. 299

7. Actual notice by the grantee of the grantor's fraudulent intent is not necessary, if he had the means of knowing by the use of ordinary diligence; or if he knew enough to put him on inquiry.—Bump on Fraud. Conv. 232. A general charge of fraud is sufficient.—2 Ala. 604. Any one badge of fraud may impeach the conveyance, and several may unite and the transaction may be upheld, but *the concurrence of several badges of fraud makes a strong case.* Bump on Fraud. Conv. 78.

8. When one charged as *particeps fraudis,* is examined as a witness to prove the contract fair, he can expect credence only when he makes a full and frank disclosure of all the facts.—7 Ala. 278–9. The forms of proceedings of courts

of equity are flexible, and may be suited to the different postures of the case. They may adjust their decrees so as to meet most, if not all, of these exigencies; and they may vary, qualify, restrain and model the remedy so as to suit it to mutual and adverse claims, controlling equities and substantial rights of all the parties.—29 Ala. 410.

9. It is a principle of law, that a transfer in pursuance of a parol agreement takes effect against creditors only from the time the conveyance is actually made.—Bump on Fraud. Conv. 249, note 4; 5 Ala. 719.

BRICKELL, C. J.—Conveyances of property real and personal, whether the consideration is adequate or inadequate, good or valuable, if made in good faith, are valid and operative as between the parties. But as against the existing creditors of the grantor, they can not be supported, unless shown to have been founded on an adequate and valuable consideration. When between the grantee, and an existing creditor, a controversy arises as to the validity of the conveyance, it has long been the settled rule of this State, that the recital of a consideration, is the mere declaration or admission of the grantor, and is not evidence against the creditor.—*Mc Cain v. Wood*, 4 Ala. 258; *Br. Bnk Decatur v. Kinsey*, 5 Ala. 9; *McGintry v. Reeves*, 10 Ala. 137; *McCaskle v. Amarine*, 12 Ala. 17; *Falkner v. Leith*, 15 Ala. 9; *Dalin v. Gardner*, ib. 758. The bill avers, and the answers admit the averment, that the debt on which the judgment in favor of the appellee was rendered, was contracted in 1860, about eight years before the deed was executed by Taylor to Hubbard. The *onus* of proving that the deed was not a mere voluntary conveyance—that it was founded on an adequate and valuable consideration, is consequently, by law, cast on the appellants. Whatever may have been the motives of the parties in its execution, as to creditors whose rights were existing, it must be regarded as merely voluntary, and presumed to be fraudulent, until the contrary is shown.

The deed is of bargain and sale, and recites as its consideration, *the sum of seven thousand dollars lawful money of the United States*, paid by the grantee to the grantor. The consideration, (in the absence of fraud and mistake, and on an application to a court of equity, for a reformation), can not be varied by parol proof. A valuable consideration being expressed, a consideration of that kind must be shown—it is not permissible, if it would be available, to show a good consideration. While the value of the consideration · may

not be changed, any consideration of the character of, and not inconsistent with that expressed may be shown, and if it is adequate will support the conveyance.   It is certainly very desirable, that all legal instruments should truly declare the actual considerations on which they are founded.   Especially would it be better, when the rights of persons, strangers to them, are to be affected.   But the law is satisfied when a consideration of the kind expressed, is satisfactorily shown. A deed reciting a pecuniary consideration, may be shown to have been taken in payment of a debt, though it declares, as does the present deed, that the money was actually paid to the grantor.   The two considerations are of the same character—equally meritorious and adequate, and the nature of the conveyance is not altered.   But that the real consideration was not pecuniary—was mere love and affection—was good, not valuable, it is not admissible to prove.   The nature of the conveyance would be changed, and the consideration proved, would be different from, and inconsistent with that expressed.—*Murphy v. Br. Bnk Mobile*, 16 Ala. 90; *Potter v. Gracie*, 58 Ala. 303; *Ellinger v. Crowl*, 17 Md. 361; *Cunningham v. Droyer*, 23 Md. 219; *Hildreth v. Sneeds*, 2 Johns. Ch. 35; Bump on Fraud. Conv. 579.

The consideration attempted to be proved in support of the deed, is not the payment of money to the grantor, but the extinguishment of an indebtedness owing by him to the grantee, and to his wife, the daughter of the grantor.   The sufficiency of the proof of a consideration, must depend on the relations existing between the parties, the circumstances surrounding them when the transaction is entered into, and their subsequent conduct in reference to it.   Clearer and more convincing proof will be required if these are calculated to excite a just suspicion of the fairness of the transaction.   Transactions between parent and child are jealously watched in a court of equity, even when the controversy arises between them, and are sustained only when shown to be free from the taint of the influence of the relation. There are older authorities which hold that when the controversy is with creditors, relationship by affinity, or consanguinity, is a badge of fraud.   The generally received opinion now is, that it is a mere circumstance dependent for its value on its connection with other circumstances, which serve to throw light upon and give color to the transaction.—Bump on Fraud. Conv. 54.   When it exists, and the rights of creditors are involved, clearer, fuller proof must be given of an adequate and valuable consideration, and of the good

faith of the grantee or vendee, than would be required of a stranger.—Bump on Fraud. Conv. 54; *Lloyd v. Williams*, 21 Penn. 327.

The indebtedness of Taylor, to his daughter, Mrs. Hubbard, which is said to have been the material element of the consideration of the deed, and of other transfers of property to Hubbard, soon after his marriage, consists of three distinct items, which are thus enumerated in the written argument of counsel—"note for rents of land, $5,000.00; distributive share of mother's estate, $12,000.00; note for money of Mrs. Hubbard, $1,110.00." Let us examine the evidence in relation to these items separately. The first, a note for the rent of land, was made in 1865. The land was given the daughter by parol in 1858, while she was an infant, to equalize her advancements of real estate, with those Taylor made to his other children. Taylor remained in possession until after the marriage of the daughter, and no conveyance or other written evidence of the gift was ever executed. In 1866, the husband of the daughter having made sale of the lands, at his request, Taylor executed a conveyance to the purchaser. The parol gift of the land to the daughter was void. It vested in her no right or title, legal or equitable, to which rent could be an incident. The father could have consummated the gift by a conveyance, but it rested merely in his volition, whether he would consummate or repudiate it. The gift was voluntary, and if a subsequent conveyance had been made merely in consummation, the conveyance would have been also voluntary; the estate of the daughter would have commenced from the day of its execution, and would not have related to the time of the parol gift.—*Hendon v. White*, 52 Ala. 597; *Davis v. McKinney*, 5 Ala. 719; *Rucker v. Abell*, 8 B Monroe, 566. In this last case it is said: "Any other doctrine would enable a father, by a verbal gift of his land to his children, retaining the title in himself, either to remain the real, as well as ostensible proprietor of the property, or by a completion of the gift, to divest himself of all right and title to it, whenever circumstances might render it necessary to do so for the purpose of placing it beyond the reach of his creditors. Such a power on the part of the father, the ownership of the property affording him the means of obtaining a delusive credit, would open a wide door for the introduction of fraud and imposition upon creditors." A debt forming a consideration which will against creditors support a transfer of property must rest not only in moral, but

[Hubbard v. Allen.]

in legal obligation, and the law must furnish a remedy for its enforcement. Statutes may bar the remedy, and if there is a valuable consideration, the statutory bar may be waived, the debt converted into a legal demand, and it will become a sufficient consideration to support a transfer or conveyance. Or, the statute of frauds may operate a bar to the enforcement of promises or agreements, for which there was a valuable consideration, and which are morally binding, the statute may be waived, and the agreement executed, without just cause of complaint by creditors who have not acquired liens. But a mere inchoate gift, it is not in the power of the donor to consummate to the prejudice of creditors.—Bump on Fraud. Conv. 220. Gratuitous promises, not resting on a valuable or meritorious consideration, are not recognized and enforced in courts of law or equity. *Kirksey v. Jones*, 8 Ala. 131; *Forward v. Armstead*, 12 Ala. 124. The note for rents was without consideration, incapable of enforcement by legal remedies, and can not be considered as forming a consideration which will support the deed against creditors.

The next item of indebtedness—the interest of Mrs. Hubbard in her mother's estate is not shown by the clear and full proof, which the law demands to support a conveyance made by an insolvent debtor to a child, or to a son-in-law. In this case there is not only insolvency, with its attending vexations of suits and judgments, and the relationship existing between the parties, but there is a combination of other suspicious circumstances, exciting the jealousy of the court, and which demand clear, full proof not only of consideration, but of the freedom of the transaction from all impurity of intention. The previous transfers to the son-in-law of choses in action founded on the same considerations as the deed—the prior voluntary conveyance to the daughter of a part of the real estate, and the effort to protect the title by a subsequent sale under execution, at which there were no other bidders, than the grantee, and his brother, who was the attorney procuring the judgment for the grantee,—and the successful bidder—the immediate redemption from him by the grantee, are circumstances casting a cloud on all the transactions, and which it was the duty of the parties to remove by clear, convincing evidence. Now, the evidence in reference to the alleged indebtedness of the grantor, on account of the share of his daughter in the property the mother had brought into the marriage, is too vague and indefinite, to justify any court in pronouncing that there was

[Hubbard v. Allen.]

in law any such indebtedness. Of what the property consisted—when it was received—whether it was then impressed with any trust which excluded the marital rights of the husband, or, whether the statutes excluding these rights were then of force, are matters of which there is no evidence. Slaves may, and probably did constitute a large part of the fortune of the wife, and emancipated by operation of law, the husband was freed from all liability to account, if such liability ever existed. The grantor is the only witness who testifies in reference to this indebtedness, and it was his duty as the facts rested peculiarly within his knowledge not to have left them, to say the least, in doubt and uncertainty. The fair and just inference from his meagre statements, is, that though there was no legal obligation, he felt himself under a moral obligation to account to his children for the property the mother had brought him. It seems that in the life of the mother, he had advanced to his older children an amount equal to that which is now claimed as due to his youngest daughter, and if these advances were made in obedience to a legal obligation, and not as a mere matter of affection, the property must have been impressed with some trust, by the terms of the gift to the mother, which ought to have been shown.

The evidence in regard to the item for money loaned by the daughter — or rather money given her, as birthday presents, which the grantor used, is not of that character, which the case demands. No memoranda, no account of these presents was kept—no evidence of debt was given for them, until about the time of the marriage of the daughter, and until the insolvency of the father. These from memory, without any data to guide him, with no recollection of the years in which the presents were made, or the amount given at any one time, he estimates that they amount to eleven or twelve hundred dollars, and gives the daughter a note for the amount. The daughter is not examined, and the debt stands on the unsupported evidence of the grantor. The debt may really exist, but it must under the circumstances be shown by clearer and fuller evidence, against a creditor whose debt and rights are fully established. A consideration or a debt of this kind is so easily feigned between parent and child, that it is mere justice, when the rights of *bona fide* creditors are involved, to demand that it be fully proved.

The remaining item of indebtedness, which it is said formed a part of the consideration of the deed, is money

[Hubbard v. Allen.]

loaned by the grantee to the grantor. The evidence in support of this item is unsatisfactory. It is said by the grantee the money was loaned in different sums, at different times, through a period of twelve or eighteen months—no evidence of debt was taken, and the grantor declares that he has no recollection of having borrowed it, and consequently none that it formed any part of the consideration of the deed. A fact, not without its importance, attending all the transactions, is, that though the grantor parted with property of considerable value, in payment of these several items of indebtedness, no receipt or release was ever given him, and the transfers do not indicate that he was entitled to be discharged. A *bona fide* creditor, though he be closely allied to his debtor, and the latter insolvent, may take property at a fair price in payment of his debt, and his title will be unassailable. The law does not forbid it; and the debtor may be moved by the influences of relationship, in preferring the creditor. If other creditors assail the transaction, it is no hardship to require clear proof of the debt, and a reasonable explanation of every suspicious circumstance. The means of proof, lie within the ability of the parties, and if they do not produce it, the transaction must be pronounced fraudulent as to complaining creditors.

The cross-bill is filed for the purpose of enabling Hubbard and wife, in the event they failed to sustain the deed, to retain the property conveyed by it, in satisfaction of the alleged indebtedness to Mrs. Hubbard, and also in satisfaction of two judgments which Hubbard claims to hold against the grantor. We have declared the evidence does not show an indebtedness to Mrs. Hubbard, and her right to relief therefore fails. This would be fatal, for the principle that when two join as complainants, they must show that they have a common or joint interest, and are both entitled to relief, and the want of interest, or right to relief of one, compels a dismissal of the bill, is as applicable to a cross-bill, as it is to an original bill. But it is not necessary to the affirmance of the decree of the chancellor that it should be rested on this narrow and technical ground. Hubbard has accepted a deed expressing an actual moneyed consideration, and has failed to prove that the consideration was real. The deed is void as to creditors—it conferred on him no title. The law condemns as wrongful its acceptance, and condemns the possession derived under it. His duty was to reconvey it to the insolvent debtor; failing in that duty, he is regarded as a trustee *in invitum*, holding for the benefit of creditors. It

would encourage, not suppress fraud, if he was permitted when the conveyance fails, to retain the property in satis-faction of demands, however just, the grantor may be liable for to him, and which were subsequently acquired forming no part of the consideration of the deed. Indirectly, effect would be given to the conveyance the statute of frauds denounces as void. There may be cases of purely voluntary conveyances, in which the donee is innocent of either actual or constructive fraud, and a court of equity would protect his possession until any just debt he had against the donor was satisfied; or would so mould a decree granting relief to other creditors, as to require payment to him, or placing him on an equality with them.—Bump on Fraud. Conv. 596. Or an innocent donee may remove incumbrances, and he will be entitled to indemnity, if the conveyance is set aside at the instance of creditors.—*Potter v. Gracie*, 58 Ala. 303. Hubbard does not stand as an innocent donee, claiming under a purely voluntary conveyance. The deed of bargain and sale, purporting to be founded on a pecuniary consideration, and fails for want of proof of that consideration. There is no principle upon which the deed can stand as a security to him for debts due him from the grantor. Tainted with actual fraud, it must be set aside altogether.—Bump on Fraud. Conv. 597; *Mariatt v. Givens*, 8 Ala. 694; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336. There are other cases in which a grantee or vendee will be protected by a court of equity, though at law the conveyance would be wholly condemned. The particular circumstances of the case, may justify a court of equity, in allowing the conveyance to stand as a security for the amount the donee or vendee may have advanced on the faith of it; or it may compel a vendee when he has purchased at an inadequate price, to pay the difference between the price and the actual value. Or may permit it to stand as a security for the debt, really due, if it was intended as a security for, or payment of such debt when right and justice require it.—*Clements v. Moore*, 6 Wall. 299; *Price v. Masterson*, 35 Ala. 483. But a party claiming under a conveyance which is actually fraudulent, because made without a valuable consideration, while expressing that consideration, and who attempts and fails entirely to sustain the consideration,—has no equity to claim the retention of the property either as security for, or in payment of independent and distinct demands against the vendor or grantor. As to creditors he has acquired the property tortiously, and

he stands in the same attitude he would stand in towards the grantor, or vendor, if he had taken possession by an admitted trespass—the conveyance under which he derives title and possession is void, not warranting the possession. It is plain that a mere creditor at large obtaining possession of the property of his debtor by force or fraud, can not set up his debt as an excuse or justification of his tort.—*Stetson v. Goldsmith*, 31 Ala. 649 ; *Harrison v. McCrary*, 37 Ala. 687. The reason and foundation of the principle, that a right cannot grow out of a wrong, is as applicable to the donee or vendee guilty of actual fraud, as it is to the trespasser.

Nor can his redemption of the four lots, from the purchaser at the sheriff's sale, avail him. We do not enter on the inquiry whether the judgment under which the sale was made was founded on a just debt. A judgment may be obtained on an honest debt, and yet obtained and used for a fraudulent purpose.—*Bum v. Abd*, 29 Penn. 387. When so obtained and used, it is void as to all whose rights are offended, and who are in a position to assail it. It is not a pleasant, and a rather unprofitable task, to recapitulate the evidence which induces us to concur in the conclusion of the chancellor, that the judgment was obtained and used for the purpose of protecting the property sold from pursuit by the creditors of Taylor. Admitting the endorsement of the bonds fixed a liability on Taylor, he alone, of the several indorsers, is sued. The judgment is rendered at a term of the court when the cause was triable only by consent of the defendant. No defence was made, nor was it intended that any should be made, and yet the record is made to bear the form of a judgment rendered on the appearance of the defendant by attorney, and on issue tried by a jury, and in the absence of the attorney, requested by the plaintiff's attorney to represent the defendant. The execution is levied on real estate, in which the defendant had no interest, and which was the property of the plaintiff in execution, if the deed to him was valid. The sale was made after the filing of the present bill, and after notice of it to Hubbard and his attorney. At the sale, the attorney, Hubbard's brother, and Hubbard, are rival bidders, and the only bidders, the former becoming the purchaser. Four days thereafter the formalities of a statutory redemption are gone through, and a conveyance is executed to Hubbard. These circumstances, it may be possible to explain, removing the unfavorable inferences which must be drawn from them. There is an absence

[Hubbard v. Allen.]

of all explanation, and no other conclusion can be drawn than that the judgment was obtained, with the intent to use it as it was used, to affect and prejudice the pre-existing rights of the *bona fide* creditors of Taylor.

The conveyance of the lands by Taylor to Griffith, in pursuance of the parol gift he had previously made to his daughter, was fraudulent as to his creditors. Title doubtless passed to Griffith, because he was a purchaser without notice. The purchase money in the hands of Hubbard, was liable to the demands of creditors—held by him as a trustee for their benefit.—Bump on Fraud. Conv. 589. When the lands were resold by Hubbard, after the rescission of the sale to Griffith, the purchase-money still remained a trust fund, which creditors could pursue. It was not in the power of Hubbard, by any application he could make of the purchase-money, or by any transfer of the notes given for it, so far as he is concerned, to divest it of its character as a trust fund, or to affect the rights of creditors. When he applied these notes, to the extinguishment of the mortgage given Mrs. Gilmer, and which is valid as against creditors, because she was without notice of the infirmity of his title, removing that mortgage as a prior lien, it was an application for the benefit of creditors, a court of equity would have compelled. The transfer of the mortgage to his wife, was without consideration, and conferred on her no right to keep it alive as a prior lien defeating the right of Taylor's creditors.

The exceptions to the register's report, raise no other question than the period of time, at which the value of the corn, acquired by Hubbard under the deed, should be computed. The chancellor was of opinion, that it should be computed at the time of the conveyance, when possession and use passed to Hubbard. The exceptions are based on the hypothesis that he should be charged with its value, at the time of taking the account. A fraudulent grantee, converted into a trustee, is subject to the general principle governing all trustees, that he shall derive no benefit and take no advantage from his relation. Having converted the corn long prior to the taking of the account, and its conversion, (being property consumable in use,) having commenced immediately on the transfer, the value of such property, at the time of the conversion was the true measure of his liability, and not its value at the time of taking the account. Bump on Fraud. Conv. 593.

The result is, the decree must be affirmed.

STONE, J., not sitting.